## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN CHEW, derivatively on behalf of BEYOND MEAT, INC., | |
| Plaintiff, | **C.A. No. _____** |
| vs. | |
| DONALD THOMPSON, GREGORY BOHLEN, RAYMOND J. LANE, SETH GOLDMAN, BERNHARD VAN LENGERICH, NED SEGAL, DIANE CARHART, MARK J. NELSON, KATHY N. WALLER, ETHAN BROWN, and CHRISTOPHER ISAAC "BIZ" STONE, | **DEMAND FOR JURY TRIAL** |
| Defendants, | |
| and | |
| BEYOND MEAT, INC., | |
| Nominal Defendant. | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Kevin Chew ("Plaintiff"), by his undersigned attorneys, derivatively and on behalf of Nominal Defendant Beyond Meat, Inc. ("Beyond Meat" or the "Company"), files his Verified Shareholder Derivative Complaint against Individual Defendants Donald Thompson, Gregory Bohlen, Raymond J. Lane, Seth Goldman, Bernhard van Lengerich, Ned Segal, Diane Carhart, Mark J. Nelson, Kathy N. Waller, Ethan Brown, and Christopher Isaac "Biz" Stone (collectively, the "Individual Defendants," and together with Beyond Meat, the "Defendants") for breaches of their fiduciary duties as directors and/or officers of Beyond Meat and for contribution under Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"). As for Plaintiff's complaint against the Individual Defendants, he alleges the following based upon personal knowledge as to his and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls, and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Beyond Meat, legal filings, news reports, securities analysts' reports and advisories pertaining to Beyond Meat, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

***SUMMARY***

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Beyond Meat's directors and officers from May 2, 2019 through January 27, 2020 (the "Relevant Period").

2.      Beyond Meat is a provider of plant-based meat products, including beef, pork, and poultry substitutes. Beyond Meat's most popular offering is the Beyond Burger, a plant-based burger sold in thousands of grocery stores and restaurants internationally.

3.      Prior to changing its corporate name in September 2018, Beyond Meat, was formerly known as a private company called Savage River, Inc. In 2014, Beyond Meat entered into a written exclusive supply agreement (the "Supply Agreement") with Don Lee Farms ("Don Lee"), a long-time manufacturer of plant-based and vegan protein products. Under the terms of the Supply Agreement, Don Lee would produce and ship to Beyond Meet all of the food products the Company required, including its notorious Beyond Burger.

4.       On May 23, 2017, Beyond Meat terminated the Supply Agreement, and began shifting its production to other manufacturers. Two days later, on May 25, 2017, Don Lee filed a lawsuit against Beyond Meat in the Superior Court of the State of California for the County of Los Angeles alleging breach of contract, misappropriation of trade secrets, and unfair competition, captioned Don Lee Farms v. Savage River, Inc., Case No. BC662838 (Cal. Super. Ct.). Over the course of next several years, Don Lee added defendants and additional fraud and negligent misrepresentation claims against Beyond Meat, alleging, among other things, that during the period that Don Lee and the Company were working together, Beyond Meat had sent Don Lee tainted ingredients on various occasions, and that in response to concerns Don Lee raised over the Company's food safety protocols, Beyond Meat employees provided to Don Lee a food safety inspector's report that had been edited to omit significant details concerning the safety of the Company's facilities. One of these defendants is Beyond Meat's current manufacturer, ProPortion Foods, LLC ("ProPortion"). The litigation also grew to include cross-complaints filed by Beyond Meat and ProPortion against Don Lee (collectively, the "Don Lee Litigation").

5.      In May 2019, while the Don Lee Litigation was ongoing, Beyond Meat completed its initial public offering ("IPO"). On May 2, 2019, Company stock began trading on the NASDAQ Stock Exchange ("NASDAQ"), marking the beginning of the Relevant Period.

6.      Throughout the Relevant Period, until November 2019, at least, the Individual Defendants caused Beyond Meat to make statements in its SEC filings denying the validity of Don Lee's claims and asserting that Beyond Meat was justified in terminating the Supply Agreement. In reality, however, Don Lee's claims had far more merit than the Individual Defendants were willing to admit to the investing public.

7.      The truth was revealed to the public on January 27, 2020, when Business Wire published an article announcing that the court in the Don Lee Litigation had issued two separate rulings;[1]  the first ruling granting Don Lee's request to file a third amended complaint naming Beyond Meat's Chief Financial Officer and Treasurer ("CFO"), along with certain other individuals as defendants with respect to Don Lee's fraud claims, and the second ruling granting Don Lee's request to attach certain documentary evidence and property belonging to Beyond Meat. These rulings indicated the "probable validity" of Don Lee's claims, contrary to the Company's representations.

8.      On this news, the price of Beyond Meat's shares dropped from $124.75 per share at the close of trading on January 27, 2020, to $120.12 at the close of trading on January 28, 2020, a drop of approximately 3.71%.

9.      During the Relevant Period, the Individual Defendants breached their fiduciary duties by personally making and/or causing Beyond Meat to make to the investing public a series

---

[1]   https://www.businesswire.com/news/home/20200127005705/en/Judge-Rules-Don-Lee-Farms-Obtain-Judgment (last visited May 26, 2020).

of materially false and misleading statements about Beyond Meat's business, operations, and compliance. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements to the investing public that failed to disclose, *inter alia*, that: (1) Beyond Meat's termination of the Supply Agreement had constituted a breach of the agreement, and would foreseeably expose the Company to legal liability, costs, and damage to the Company's reputation; (2) Beyond Meat falsely represented the accuracy of a food safety consultant's report provided to Don Lee, which certain Company employees had doctored to, among other things, exclude pertinent safety information; and (3) the Company failed to maintain internal controls.

10.     During the Relevant Period, the Individual Defendants continued to breach their fiduciary duties by failing to correct and causing Beyond Meat to fail to correct these false and misleading statements and omissions of material fact to the investing public.

11.     Moreover, during the Relevant Period, six of the Individual Defendants breached their fiduciary duties by engaging in lucrative insider sales, obtaining proceeds of over $62.3 million.

12.     Furthermore, during the Relevant Period, the Individual Defendants breached their fiduciary duties by causing Beyond Meat to fail to maintain adequate internal controls.

13.     In light of the Individual Defendants' misconduct, which has subjected the Beyond Meat and certain of its officers to being named as defendants in the Don Lee Litigation, and which has subjected Beyond Meat, the Company's President and Chief Executive Officer ("CEO"), and the Company's CFO to being defendants in a securities class action in the United States District Court for the Central District of California ("Class Action"), the need to undertake internal investigations, the need to implement adequate internal controls over its financial reporting, the

losses to Beyond Meat from the over-compensation by the Company of the Individual Defendants, most of whom benefitted from insider sales, Beyond Meat will have to expend millions of dollars.

14.    In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are Beyond Meat's current directors, their collective engagement in fraud, the substantial likelihood of the directors' liability in this derivative action and the CEO's and CFO's liability in the Class Action, their being beholden to each other, their longstanding business and personal relationships with each other, and their not being disinterested and/or independent directors, a majority of Beyond Meat's Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of Beyond Meat with the requisite level of disinterestedness and independence.

*JURISDICTION AND VENUE*

15.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 10(b) of the Exchange Act, 15. U.S.C. § 78j(b), and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f). Plaintiff's claims also raise a federal question pertaining to the claims made in the Class Action based on violations of the Exchange Act. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16.    This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

17.    The Court has personal jurisdiction over each of the Defendants because each Defendant is either a corporation incorporated in this District, or he or she is an individual who has minimum contacts with this District to justify the exercise of jurisdiction over them.

18.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District. Venue is proper in this District because Beyond Meat and the Individual Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

*PARTIES*

19.     Plaintiff Kevin Chew is a current shareholder of Beyond Meat common stock and has continuously held Beyond Meat common stock at all relevant times.

20.     Nominal Defendant Beyond Meat is a Delaware corporation with its principal executive offices located at 119 Standard Street, El Segundo, California 90245. Beyond Meat's shares trade on NASDAQ under the ticker symbol "BYND."

21.     Defendant Ethan Brown ("Brown") is the founder of Beyond Meat and has served as the Company's President and CEO since 2009. According to Beyond Meat's Prospectus on Form 424B4 filed on August 2, 2019 (the "August 2019 Prospectus"), as of July 10, 2019, Brown beneficially owned 3,177,922 shares of Beyond Meat's common stock, which represented 5.14% of Beyond Meat's outstanding shares of common stock on that date. Given that the price per share of Beyond Meat's common stock at the close of trading on July 10, 2019 was $163.51, Brown owned approximately $519.6 million worth of Beyond Meat stock.  For the fiscal year ended December 31, 2018, Brown received $967,994 in compensation from Beyond Meat. This included $298,750 in salary, $524,244 in option awards, and $145,000 in non-equity incentive plan compensation. During the Relevant Period, Brown made the following sale of Company stock and made no purchases of Company stock:

| Date | Shares | Cost | Proceeds |
|------|--------|------|----------|
| 8/5/2019 | 45,000 | $160.00 | $7,200,000 |

His insider sale made with knowledge of material non-public information before the material misstatements and omissions were exposed demonstrates his motive in facilitating and participating in the scheme.

22.     Defendant Mark J. Nelson ("Nelson") has served as Beyond Meat's CFO since May 2017, and as Treasurer since September 2018. Previously, he served as Beyond Meat's Chief Operating Officer from May 2017 through September 2018, and as Secretary from September 2018 through May 2019. According to the August 2019 Prospectus, as of July 10, 2019, Nelson beneficially owned 744,221 shares of Beyond Meat's common stock, which represented 1.23% of Beyond Meat's outstanding shares of common stock on that date. Given that the price per share of Beyond Meat's common stock at the close of trading on July 10, 2019 was $163.51, Nelson owned approximately $121.6 million worth of Beyond Meat stock.  For the fiscal year ended December 31, 2018, Nelson received $610,758 in compensation from Beyond Meat. This included $326,666 in salary, $121,591 in option awards, and $162,501 in non-equity incentive plan compensation. During the Relevant Period, Nelson made the following sales of Beyond Meat stock and made no purchases of Company stock:

| Date | Shares | Cost | Proceeds |
|------|--------|------|----------|
| 8/5/2019 | 64,452 | $160.00 | $10,312,320 |
| 11/6/2019 | 70,000 | $81.34 | $5,693,870 |

Thus, in total, before the fraud was exposed, he sold 134,452 Beyond Meat shares on inside information, for which he received approximately $16 million. His insider sales made with

knowledge of material non-public information demonstrate his motive in facilitating and participating in the scheme.

23.     Defendant Seth Goldman ("Goldman") has served as a Beyond Meat director since February 2013 and is Chairman of the Board. He also served as Executive Chair of Beyond Meat from February 2013 until February 2020. According to the August 2019 Prospectus, as of July 10, 2019, Goldman beneficially owned 1,032,224 shares of Beyond Meat's common stock, which represented 1.71% of Beyond Meat's outstanding shares of common stock on that date. Given that the price per share of Beyond Meat's common stock at the close of trading on July 10, 2019 was $163.51, Goldman owned approximately $168.7 million worth of Beyond Meat stock. For the fiscal year ended December 31, 2018, Goldman received $175,000 in compensation from Beyond Meat, which consisted entirely of fees paid for consulting services.

24.     Defendant Kathy N. Waller ("Waller") has served as a Company director since November 2018, and also serves as the Chair of Audit Committee and as a member of the Nominating and Corporate Governance Committee. According to the August 2019 Prospectus, as of July 10, 2019, Waller beneficially owned 7,476 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on July 10, 2019 was $163.51, Waller owned approximately $1.22 million worth of Beyond Meat stock. For the fiscal year ended December 31, 2018, Waller received $149,522 in compensation from the Company, which consisted entirely of option awards.

25.     Defendant Donald Thompson ("Thompson") has served as a Company director since October 2015, and also serves as the Chair of the Compensation Committee. According to the August 2019 Prospectus, as of July 10, 2019, Thompson beneficially owned 2,632,384 shares of the Company's common stock. Given that the price per share of the Company's common stock

at the close of trading on July 10, 2019 was $163.51, Thompson owned approximately $430.4 million worth of Beyond Meat stock.

26.     Defendant Christopher Isaac "Biz" Stone ("Stone") has served as a Company director since January 2012, and also serves as the Chair of the Nominating and Corporate Governance Committee. According to the August 2019 Prospectus, as of July 10, 2019, Stone beneficially owned 18,519 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on July 10, 2019 was $163.51, Stone owned approximately $3.02 million worth of Beyond Meat stock. During the Relevant Period, Stone made the following sales of Beyond Meat stock and made no purchases of Company stock:

| Date | Shares | Cost | Proceeds |
|------|--------|------|----------|
| 10/30/2019 | 20,000 | $88.02 | $1,760,380 |
| 11/7/2019 | 20,000 | $78.51 | $1,570,180 |
| 11/14/2019 | 10,000 | $82.00 | $820,000 |
| 11/20/2019 | 20,000 | $78.04 | $1,560,800 |
| 11/27/2019 | 20,000 | $82.01 | $1,640,160 |
| 11/29/2019 | 30,000 | $83.62 | $2,508,750 |

Thus, in total, before the fraud was exposed, he sold 120,000 Beyond Meat shares on inside information, for which he received approximately $9.86 million. His insider sales made with knowledge of material non-public information before the material misstatements and omissions were exposed demonstrate his motive in facilitating and participating in the scheme.

27.     Defendant Bernhard van Lengerich ("van Lengerich") has served as a Beyond Meat director since November 2016. According to the August 2019 Prospectus, as of July 10, 2019, van Lengerich beneficially owned 586,223 shares of Beyond Meat's common stock. Given that the price per share of Beyond Meat's common stock at the close of trading on July 10, 2019 was

$163.51, van Lengerich owned approximately $95.8 million worth of Beyond Meat stock. For the fiscal year ended December 31, 2018, van Lengerich received $120,000 in compensation from Beyond Meat, which consisted entirely of fees paid for consulting services. During the Relevant Period, van Lengerich made the following sale of Company stock:

| Date | Shares | Cost | Proceeds |
| --- | --- | --- | --- |
| 11/5/2019 | 133,147 | $82.66 | $11,005,664 |

His insider sale made with knowledge of material non-public information demonstrates his motive in facilitating and participating in the scheme.

28.     Defendant Diane Carhart ("Carhart") has served as a Beyond Meat director since January 2016, and also serves as a member of the Audit Committee. According to the August 2019 Prospectus, as of July 10, 2019, Carhart beneficially owned 100,005 shares of Beyond Meat's common stock. Given that the price per share of Beyond Meat's common stock at the close of trading on July 10, 2019 was $163.51, Carhart owned approximately $16.3 million worth of Beyond Meat stock. During the Relevant Period, Carhart made the following sales of Beyond Meat stock and made no purchases of Company stock:

| Date | Shares | Cost | Proceeds |
| --- | --- | --- | --- |
| 8/5/2019 | 9,069 | $160.00 | $1,451,040 |
| 10/30/2019 | 62,500 | $84.37 | $5,273,125 |

Thus, in total, before the fraud was exposed, she sold 71,569 Beyond Meat shares on inside information, for which she received approximately $6.7 million. Her insider sales made with

knowledge of material non-public information demonstrate her motive in facilitating and participating in the scheme.

29.     Defendant Ned Segal ("Segal") has served as a Beyond Meat director since November 2018, and also serves as a member of the Audit Committee. According to the August 2019 Prospectus, as of July 10, 2019, Segal beneficially owned 11,976 shares of Beyond Meat's common stock. Given that the price per share of Beyond Meat's common stock at the close of trading on July 10, 2019 was $163.51, Segal owned approximately $1.95 million worth of Beyond Meat stock. For the fiscal year ended December 31, 2018, Segal received $149,522 in compensation from Beyond Meat, which consisted entirely of option awards.

30.     Defendant Gregory Bohlen ("Bohlen") served as a Beyond Meat director from February 2013 until he resigned on October 23, 2019. According to the August 2019 Prospectus, as of July 10, 2019, Bohlen beneficially owned 797,224 shares of Beyond Meat's common stock, which represented 1.32% of Beyond Meat's outstanding shares of common stock on that date. Given that the price per share of Beyond Meat's common stock at the close of trading on July 10, 2019 was $163.51, Bohlen owned approximately $130.3 million worth of Beyond Meat stock. During the Relevant Period, Bohlen made the following sale of Beyond Meat stock and made no purchases of Company stock:

| Date | Shares | Cost | Proceeds |
|------|--------|------|----------|
| 8/5/2019 | 72,332 | $160.00 | $11,573,120 |

31.     His insider sale made with knowledge of material non-public information demonstrates his motive in facilitating and participating in the scheme.

32.     Defendant Raymond J. Lane ("Lane") has served as a Beyond Meat director since February 2015 and also serves as a member of the Compensation Committee. According to the August 2019 Prospectus, as of July 10, 2019, Lane beneficially owned 256,108 shares of Beyond Meat's common stock. Given that the price per share of Beyond Meat's common stock at the close of trading on July 10, 2019 was $163.51, Lane owned approximately $41.8 million worth of Beyond Meat stock.

*MISCONDUCT ENGAGED IN BY THE INDIVIDUAL DEFENDANTS*

**Factual Background**

33.     Beyond Meat is a California-based food company that offers a variety of plant-based meat products, including vegan beef, pork, and poultry. The Company was founded in 2009. The Company was formerly known as Savage River Inc. It changed its name to Beyond Meat in September 2018. Beyond Meat's most successful product is the Beyond Burger, a popular vegan burger sold in thousands of grocery stores and restaurants across the U.S., Canada, and several other countries. Historically, Beyond Meat has made use of co-manufacturers to process and package the Company's products, including the Beyond Burger, which Beyond Meat then distributes and markets.

**Don Lee Litigation**

34.     In 2014, Beyond Meat entered into the Supply Agreement with Don Lee, a producer of plant-based meat substitutes and other food products.

35.     Pursuant to the Supply Agreement, Don Lee would produce, test, and ship to Beyond Meat all of Beyond Meat's product offerings, including Beyond Meat's flagship product, the Beyond Burger.

36.     The Supply Agreement remained in place for approximately three years, until on May 23, 2017, not long after the launch of the Beyond Burger, Beyond Meat terminated the Supply Agreement, citing Don Lee's failure to rectify certain alleged breaches of the agreement.

37.     Subsequently, Beyond Meat began sourcing its production to other manufacturers, such as ProPortion.

38.     Two days later, on May 25, 2017, Don Lee commenced the Don Lee Litigation, asserting claims against Beyond Meat for breach of contract, misappropriation of trade secrets, and unfair competition arising out of Beyond Meat's termination of the Supply Agreement.

39.     In July 2017, Beyond Meat filed a cross-complaint against Don Lee alleging breach of contract, unfair competition, and unlawful conversion of Beyond Meat property.

40.     As the litigation proceeded, Don Lee added ProPortion as a defendant in an amended complaint filed in October 2018, and added additional claims of fraud and negligent misrepresentation against Beyond Meat, alleging that Don Lee had discovered plastic, cardboard, and metal waste in raw ingredients provided to Don Lee by Beyond Meat, and that a Beyond Meat truck had once delivered a batch of ingredients contaminated by an unknown white powder.

41.     Don Lee also alleged that Beyond Meat had provided to Don Lee a doctored version of a third-party safety consultant's report on Beyond Meat's facilities, while representing that the report constituted the full opinion of the safety consultant, thereby inducing Don Lee to agree to expand the scope of the Supply Agreement and Don Lee's commitments to Beyond Meat.

42.     While still in the midst of the Don Lee Litigation, in May 2019, Beyond Meat conducted its IPO.

43.     The IPO was initiated on May 2, 2019.

44.     Beyond Meat issued 11,068,750 shares priced at $25.00 per share.

45.     Beyond Meat raised over $240 million.

46.     Beyond Meat's stock began trading at $46 per share and surged to nearly $73 per share by the open of the following trading day.

47.     The IPO was "the biggest-popping IPO for a U.S. company that raised more than $200 million since 2000[.]"[2]

48.     Throughout the Relevant Period, the Don Lee Litigation was discussed in many of the Beyond Meat's public statements filed with the SEC.

49.     However, these statements were limited to generic disclaimers merely noting that Beyond Meat "could" face liability or be required to pay damages in connection with the Don Lee Litigation, which were inaccurate in light of the Individual Defendants' knowledge of the Company's conduct with respect to Don Lee and the Supply Agreement.

50.     On January 27, 2020, Don Lee filed its Third Amended Complaint in the Don Lee Litigation.

51.     The Don Lee Litigation remains ongoing as of the date of filing this complaint.

**Materially False and Misleading Statements**

*IPO Materials*

52.     On May 3, 2019, the day after Beyond Meat's stock began trading on NASDAQ, the Company filed with the SEC a Prospectus on Form 424B4 (the "May 2019 Prospectus") in connection with the IPO.

53.     The May 2019 Prospectus formed part of Beyond Meat's Registration Statement on Form S-1 filed with the SEC on November 16, 2018, which date was before Beyond Meat went

---

[2]   https://www.marketwatch.com/story/beyond-meat-soars-163-in-biggest-popping-us-ipo-since-2000-2019-05-02 (last visited May 26, 2020).

public (the "May 2019 Registration Statement," and together with the May 2019 Prospectus, the

"IPO Materials").

54.     The May 2019 Registration Statement was signed by Defendants Brown, Nelson,

Goldman, Bohlen, Carhart, Lane, van Lengerich, Segal, Stone, Thompson, Waller, and non-party

Michael A. Pucker.

55.     In a discussion of the risk factors facing Beyond Meat, the IPO Materials stated the

following regarding the Don Lee Litigation:

> For example, on May 25, 2017, following our termination of our supply agreement
> with Don Lee Farms, a co-manufacturer, Don Lee Farms filed a lawsuit against us
> in California state court claiming that we wrongfully terminated the parties'
> contract and that we misappropriated their trade secrets by sharing with subsequent
> co- manufacturers the processes for manufacturing our products-processes which
> they claim to have developed. On July 27, 2017 we filed a cross-complaint, alleging
> that Don Lee Farms (1) breached the supply agreement, including by failing to
> provide saleable product, as certain of our products manufactured by Don Lee
> Farms were contaminated with salmonella and other foreign objects, and that Don
> Lee Farms did not take appropriate actions to address these issues; (2) engaged in
> unfair competition in violation of California's Unfair Competition Law; and (3)
> unlawfully converted certain Beyond Meat property, including certain pieces of
> equipment. Don Lee Farms is seeking unspecified compensatory and punitive
> damages, declaratory and injunctive relief, including the prohibition of Beyond
> Meat's use or disclosure of the alleged trade secrets, and attorneys' fees and
> costs. In addition, in October 2018, Don Lee Farms amended its complaint to add
> ProPortion Foods, LLC (one of Beyond Meat's current contract manufacturers) as
> a defendant, principally for claims arising from ProPortion's alleged use of Don
> Lee Farms' alleged trade secrets, and for replacing Don Lee Farms as Beyond
> Meat's co-manufacturer. We are seeking monetary damages, restitution of monies
> paid to Don Lee Farms, and attorneys' fees and costs. ***We believe we were justified
> in terminating the supply agreement with Don Lee Farms, that we did not
> misappropriate their alleged trade secrets and that Don Lee Farms is liable for
> the conduct alleged in our cross-complaint. We intend to vigorously defend
> ourselves against their claims and prosecute our own.*** However, we cannot assure
> you that they will not prevail in all or some of their claims against us or that we will
> prevail in some or all of our claims against Don Lee Farms. If Don Lee Farms
> succeeds in the lawsuit, ***we could be required to pay contract damages***, reasonably
> calculated at what we would have paid them to produce our products through 2019,
> the end of the contract term, and ***Don Lee Farms could also claim some ownership
> in the intellectual property that we possess in our products***, and thus claim a stake

in the value we will derive from that intellectual property going forward. (Emphasis added.)

### *1Q19 10-Q*

56.     On June 12, 2019, Beyond Meat filed with the SEC its quarterly report for the first fiscal quarter ended March 30, 2019 on Form 10-Q (the "1Q19 10-Q").

57.     The 1Q19 10-Q was signed by Defendants Brown and Nelson.

58.     It contained certifications pursuant to Rule 13a-14(a) and 15d-14(a) under the Exchange Act and the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Brown and Nelson attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to Beyond Meat's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

59.     In its section on legal proceedings, the 1Q19 10-Q made representations similar to those made in the May 2019 Prospectus with respect to the Don Lee Litigation, stating the following:

> On May 25, 2017, Don Lee Farms, a division of Goodman Food Products, Inc., filed a complaint against us in the Superior Court of the State of California for the County of Los Angeles asserting claims for breach of contract, misappropriation of trade secrets, unfair competition under the California Business and Professions Code, money owed and due, declaratory relief and injunctive relief, each arising out of our decision to terminate an exclusive supply agreement between us and Don Lee Farms. *We deny all of these claims* and filed counterclaims on July 27, 2017, alleging breach of contract, unfair competition under the California Business and Professions Code and conversion.
>
> * * *
>
> *We believe we were justified in terminating the supply agreement with Don Lee Farms, that we did not misappropriate their alleged trade secrets, that we are not liable for the fraud or negligent misrepresentation alleged in the proposed second amended complaint, that Don Lee Farms is liable for the conduct alleged in our cross-complaint, and that we are not liable to ProPortion for any indemnity, contribution, or repayment, including for any damages or attorney's fees and costs. We are currently in the process of litigating this matter and intend to vigorously defend ourselves against the claims.* We cannot assure you that Don Lee Farms or ProPortion will not prevail in all or some of their claims against us, or that we will prevail in some or all of our claims against Don Lee Farms. For example, if Don Lee Farms succeeds in the lawsuit, *we could be required to pay damages, including but not limited to contract damages* reasonably calculated at

what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and ***Don Lee Farms could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves***, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply agreement with Don Lee Farms. Based on our current knowledge, we have determined that the amount of any material loss or range of any losses that is reasonably possible to result from this lawsuit is not estimable. (Emphasis added.)

### *2Q19 10-Q*

60.     On July 29, 2019, Beyond Meat filed with the SEC its quarterly report for the second fiscal quarter ended June 29, 2019 on Form 10-Q (the "2Q19 10-Q").

61.     The 2Q19 10-Q was signed by Defendants Brown and Nelson.

62.     It contained SOX certifications signed by Defendants Brown and Nelson attesting to the accuracy of the 2Q19 10-Q.

63.     The 2Q19 10-Q stated the following concerning the Don Lee Litigation:

On May 25, 2017, Don Lee Farms, a division of Goodman Food Products, Inc., filed a complaint against us in the Superior Court of the State of California for the County of Los Angeles asserting claims for breach of contract, misappropriation of trade secrets, unfair competition under the California Business and Professions Code, money owed and due, declaratory relief and injunctive relief, each arising out of our decision to terminate an exclusive supply agreement between us and Don Lee Farms. ***We deny all of these claims*** and filed counterclaims on July 27, 2017, alleging breach of contract, unfair competition under the California Business and Professions Code and conversion.

\* \* \*

***On June 19, 2019, we filed an answer denying Don Lee Farms' claims***. Trial is currently set for May 18, 2020.

\* \* \*

***We believe we were justified in terminating the supply agreement with Don Lee Farms, that we did not misappropriate their alleged trade secrets, that we are not liable for the fraud or negligent misrepresentation alleged in the proposed second amended complaint, that Don Lee Farms is liable for the conduct alleged in our cross-complaint, and that we are not liable to ProPortion for any indemnity, contribution, or repayment, including for any damages or attorney's fees and costs. We are currently in the process of litigating this matter and intend to vigorously defend ourselves against the claims***. We cannot assure you that Don Lee Farms or ProPortion will not prevail in all or some of their claims against us, or that we will prevail in some or all of our claims against Don Lee Farms. For

example, if Don Lee Farms succeeds in the lawsuit, ***we could be required to pay damages, including but not limited to contract damages*** reasonably calculated at what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and ***Don Lee Farms could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves***, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply agreement with Don Lee Farms. Based on our current knowledge, we have determined that the amount of any material loss or range of any losses that is reasonably possible to result from this lawsuit is not estimable. (Emphasis added.)

### *The SPO Materials*

64.     On July 29, 2019, Beyond Meat also filed with the SEC a Registration Statement on Form S-1 (the "July 2019 Registration Statement") in connection with a secondary public offering ("SPO").

65.     The July 2019 Registration Statement was signed by Defendants Brown, Nelson, Goldman, Bohlen, Carhart, Lane, van Lengerich, Segal, Stone, Thompson, and Waller.

66.     On August 2, 2019, Beyond Meat filed the August 2019 Prospectus, which formed part of the July 2019 Registration Statement (collectively, the "SPO Materials").

67.     The SPO Materials stated the following with respect to the Don Lee Litigation:

For example, on May 25, 2017, following our termination of our supply agreement with Don Lee Farms, a co-manufacturer, Don Lee Farms filed a lawsuit against us in California state court claiming that we wrongfully terminated the parties' contract and that we misappropriated their trade secrets principally by sharing with subsequent co-manufacturers the processes for manufacturing our products— processes which they claim to have developed. On July 27, 2017 we filed a cross-complaint, alleging that Don Lee Farms (1) breached the supply agreement, including by failing to provide saleable product, as certain of our products manufactured by Don Lee Farms were contaminated with salmonella and other foreign objects, and that Don Lee Farms did not take appropriate actions to address these issues; (2) engaged in unfair competition in violation of California's Unfair Competition Law; and (3) unlawfully converted certain Beyond Meat property, including certain pieces of equipment. In October 2018, Don Lee Farms filed an amended complaint that added ProPortion Foods, LLC (one of Beyond Meat's current contract manufacturers) as a defendant, principally for claims arising from ProPortion's alleged use of Don Lee Farms' alleged trade secrets, and for replacing Don Lee Farms as Beyond Meat's co-manufacturer. ProPortion filed an answer denying all of Don Lee Farms' claims and a cross-complaint against Beyond Meat asserting claims of total and partial equitable indemnity, contribution, and repayment. On March 11, 2019, Don Lee Farms filed a second amended complaint

to add claims of fraud and negligent misrepresentation against us. On May 30, 2019, the judge denied our motion to dismiss the fraud and negligent misrepresentation claims, allowing the claims to proceed. On June 19, 2019, *we filed an answer denying Don Lee Farms' claims*. Trial is currently set for May 18, 2020.

Don Lee Farms is seeking from us and ProPortion unspecified compensatory and punitive damages, declaratory and injunctive relief, including the prohibition of our use or disclosure of the alleged trade secrets, and attorneys' fees and costs. We are seeking from Don Lee Farms monetary damages, restitution of monies paid to Don Lee Farms, and attorneys' fees and costs. ProPortion is seeking indemnity, contribution, or repayment from us of any or all damages that ProPortion may be found liable to Don Lee Farms, and attorney's fees and costs. *We believe we were justified in terminating the supply agreement with Don Lee Farms, that we did not misappropriate their alleged trade secrets, that we are not liable for the fraud or negligent misrepresentation alleged in the proposed second amended complaint, that Don Lee Farms is liable for the conduct alleged in our cross-complaint, and that we are not liable to ProPortion for any indemnity, contribution, or repayment, including for any damages or attorney's fees and costs*.

*We intend to vigorously defend ourselves against the claims and prosecute our own*. However, we cannot assure you that Don Lee Farms or ProPortion will not prevail in all or some of their claims against us, or that we will prevail in some or all of our claims against Don Lee Farms. For example, if Don Lee Farms succeeds in the lawsuit, *we could be required to pay damages, including but not limited to contract damages* reasonably calculated at what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and *Don Lee Farms could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves*, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply agreement with Don Lee Farms. As another example, we also could be required to pay attorney's fees and costs incurred by Don Lee Farms or ProPortion. (Emphasis added.)

68.   Beyond Meat's secondary public offering closed on August 5, 2019.

69.   Beyond Meat issued 3,737,500 shares priced at $160.00 per share.

70.   Beyond Meat received approximately $38.5 million in proceeds.

### *3Q19 10-Q*

71.   On November 12, 2019, Beyond Meat filed with the SEC its quarterly report for the third fiscal quarter ended September 28, 2019 on Form 10-Q (the "3Q19 10-Q").

72.    The 3Q19 10-Q was signed by Defendants Brown and Nelson.

73.    It contained SOX certifications signed by Defendants Brown and Nelson attesting to the accuracy of the 3Q19 10-Q.

74.    The 3Q19 10-Q stated the following concerning the Don Lee Litigation:

On May 25, 2017, Don Lee Farms, a division of Goodman Food Products, Inc., filed a complaint against us in the Superior Court of the State of California for the County of Los Angeles asserting claims for breach of contract, misappropriation of trade secrets, unfair competition under the California Business and Professions Code, money owed and due, declaratory relief and injunctive relief, each arising out of our decision to terminate an exclusive supply agreement between us and Don Lee Farms. We deny all of these claims and filed counterclaims on July 27, 2017, alleging breach of contract, unfair competition under the California Business and Professions Code and conversion.

* * *

**On June 19, 2019, we filed an answer denying Don Lee Farms' claims**. Trial is currently set for May 18, 2020.

* * *

**We believe we were justified in terminating the supply agreement with Don Lee Farms, that we did not misappropriate their alleged trade secrets, that we are not liable for the fraud or negligent misrepresentation alleged in the proposed second amended complaint, that Don Lee Farms is liable for the conduct alleged in our cross-complaint, and that we are not liable to ProPortion for any indemnity, contribution, or repayment, including for any damages or attorney's fees and costs. We are currently in the process of litigating this matter and intend to vigorously defend ourselves against the claims**. We cannot assure you that Don Lee Farms or ProPortion will not prevail in all or some of their claims against us, or that we will prevail in some or all of our claims against Don Lee Farms. For example, if Don Lee Farms succeeds in the lawsuit, **we could be required to pay damages, including but not limited to contract damages** reasonably calculated at what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and **Don Lee Farms could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves**, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply agreement with Don Lee Farms. Based on our current knowledge, we have determined that the amount of any material loss or range of any losses that is reasonably possible to result from this lawsuit is not estimable. (Emphasis added.)

75.     The foregoing constituted false and misleading statements of material fact because these statements failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, the Individual Defendants improperly failed to disclose, *inter alia*, that: (1) Beyond Meat's termination of the Supply Agreement had constituted a breach of the agreement, and would foreseeably expose the Company to legal liability, costs, and damage to the Company's reputation; (2) Beyond Meat falsely represented the accuracy of a food safety consultant's report provided to Don Lee, which certain Company employees had doctored to, among other things, exclude pertinent safety information; and (3) Beyond Meat failed to maintain internal controls.

**The Truth is Exposed**

76.     After the market closed on January 27, 2020, *Business Wire* published an article titled, "Judge Rules Don Lee Farms Likely to Obtain a Judgment. Beyond Meat's CFO and Others Named Individually for Fraud."

77.     The article revealed that the judge in the Don Lee Litigation had ruled that Don Lee had "proved the probable validity of its claim," stating the following, in relevant part:

> A judge has ruled Don Lee Farms proved the probable validity of its claim that Beyond Meat breached its manufacturing agreement with Don Lee Farms. The Court issued a Right to Attach Order. In a separate motion before a different Judge, the Court granted Don Lee Farms' request to name Beyond Meat Chief Financial Officer Mark Nelson, Senior Quality Assurance Manager Jessica Quetsch and Director of Operations Anthony Miller in its fraud claims which allege they intentionally doctored and omitted material information from a food safety consultant's report, and then delivered that doctored report to Don Lee Farms and affirmatively represented that it was the complete opinion of the consultant. The omitted portions discussed significant food safety issues at Beyond Meat's facility.
>
> The next day, Beyond Meat announced it hired new lawyers.

78.     The article further quoted President of Don Lee, Donald Goodman, who stated that "Our claims have been shown to several judges and each one has ruled in our favor."

79.     The article also revealed that Beyond Meat had lost motions to conceal 147,000 documents from the public.

80.     On this news, the price of Beyond Meat's stock dropped from $124.75 per share at the close of trading on January 27, 2020, to $120.12 at the close of trading on January 28, 2020, a drop of approximately 3.71%.

## THE INDIVIDUAL DEFENDANTS DAMAGED BEYOND MEAT

81.     As a result of the Individual Defendants' misconduct, Beyond Meat incurred and will incur millions of dollars in losses and expenses.

82.     Such expenditures include, but are not limited to, legal fees associated with the Don Lee Litigation, the Class Action filed against Beyond Meat, its CEO, and its CFO, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

83.     Such losses include, but are not limited to, excessive compensation and benefits paid to the Individual Defendants, including bonuses tied to the Company's attainment of certain objectives and benefits paid to the Individual Defendants who breached their fiduciary duties to Beyond Meat.

84.     As a direct and proximate result of the Individual Defendants' conduct, Beyond Meat has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague Beyond Meat's stock in the future due to the Company's and the Individual Defendants' false statements and omissions and the Individual Defendants' breaches of fiduciary duties and violations of the Exchange Act.

## DEMAND FUTILITY AND DERIVATIVE ALLEGATIONS

85.     Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

86.     Plaintiff brings this action derivatively and for the benefit of Beyond Meat to redress injuries suffered as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Beyond Meat and violations of the Exchange Act.

87.     Beyond Meat is named solely as a nominal party in this action.

88.     This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

89.     Plaintiff is, and has continuously been at all relevant times, a shareholder of Beyond Meat.

90.     Plaintiff will adequately and fairly represent the interests of Beyond Meat in enforcing and prosecuting its rights.

91.     Plaintiff has retained competent counsel who are experienced in shareholder derivative litigation to prosecute this derivative action.

92.     A pre-suit demand on the Board is futile and, thus, excused.

93.     At the time of filing of this derivative action, the Board consists of Defendants Brown, Goldman, Carhart, Lane, van Lengerich, Segal, Stone, Thompson, and Waller (collectively, the "Directors").

94.     Plaintiff needs only to allege demand futility as to five of the nine Directors who are on the Board at the time this action is commenced.

95.     Demand is excused as to all of the Directors because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause Beyond Meat to make false and misleading statements and omissions of material facts, while four of them engaged in insider sales based on material non-public information, netting proceeds of over $34.7 million, rendering them

unable to impartially investigate the charges and decide whether to pursue action against themselves and the rest of the Individual Defendants.

96.     In abdication of their fiduciary duties, the Directors either knowingly or recklessly participated in making and/or causing Beyond Meat to make the false and misleading statements of material fact alleged in this complaint.

97.     The fraudulent scheme was, *inter alia*, intended to make Beyond Meat appear more profitable and attractive to investors. Consequently, the Directors breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and therefore excused.

98.     Brown is the founder of Beyond Meat and has served as its President and CEO since 2009. As Beyond Meat admits, he is a non-independent director. Beyond Meat provides Defendant Brown with his principal occupation, and he receives excessive compensation, including $967,994 during fiscal year 2018. Brown was ultimately responsible for all of the false and misleading statements and omissions that were made, including those contained in the IPO and SPO Materials, which he signed, and in the 1Q19 10-Q, 2Q19 10-Q, and 3Q19 10-Q, which he signed and for which he signed SOX certifications. As Beyond Meat's top officer and as a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and omissions and consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme and to protect corporate assets. Brown caused Beyond Meat to terminate the Supply Agreement and, thus, was aware prior to the IPO that such termination would expose Beyond Meat to liability. His insider sales before the fraud was exposed, which yielded approximately $7.2 million in proceeds, demonstrate his motive in facilitating and participating in the fraud. Moreover, Defendant Brown

is a defendant in the Class Action. For these reasons, too, Defendant Brown breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

99.     Goldman serves as Chairman of the Board and has served as a Beyond Meat director since February 2013 and Executive Chair from February 2013 to February 2020. Goldman has received and continues to receive compensation for his role as a director as described in this complaint. As a trusted director, he conducted little, if any, oversight of Beyond Meat's engagement in the scheme to make false and misleading statements and omissions and consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme and to protect corporate assets. Goldman was on Beyond Meat's Board at the time the Company terminated the Supply Agreement and, thus, was aware prior to the IPO that such termination would expose Beyond Meat to liability in the future. Moreover, Goldman signed the IPO and SPO Materials and, therefore, personally made the false and misleading statements and omissions that were made therein. For these reasons, too, Goldman breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

100.    Segal has served as a Beyond Meat director since November 2018 and also serves as a member of the Audit Committee. Segal has received and continues to receive compensation for his role as a director as described herein. As a trusted director, he conducted little, if any, oversight of Beyond Meat's engagement in the scheme to make false and misleading statements and omissions and consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme and to protect corporate assets. Segal also signed the IPO and SPO Materials and, therefore, personally made the false and misleading statements and omissions made

therein. For these reasons too, Segal breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

101.    van Lengerich has served as a Beyond Meat director since November 2016. Defendant van Lengerich has received and continues to receive compensation for his role as a director as described in this complaint. As a trusted director, he conducted little, if any, oversight of Beyond Meat's engagement in the scheme to make false and misleading statements and omissions and consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme and to protect corporate assets. van Lengerich was on its Board at the time Beyond Meat terminated the Supply Agreement, and thus was aware prior to the IPO that such termination would expose the Company to liability in the future. van Lengerich also signed the IPO and SPO Materials and, therefore, personally made the false and misleading statements and omissions that were made therein. His insider sale before the fraud was exposed, which yielded approximately $11 million in proceeds, demonstrates his motive in facilitating and participating in the fraud. For these reasons too, van Lengerich breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

102.    Waller has served as a Beyond Meat director since November 2018 and also serves as the Chair of Audit Committee and as a member of the Nominating and Corporate Governance Committee. Waller received and continues to receive compensation for her role as a director as described in this complaint. As a trusted director, she conducted little, if any, oversight of Beyond Meat's engagement in the scheme to make false and misleading statements and omissions and consciously disregarded her duties to monitor such controls over reporting and engagement in the

scheme and to protect corporate assets. Waller also signed the IPO and SPO Materials and, therefore, personally made the false and misleading statements and omissions that were made therein. For these reasons too, Waller breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

103.     Thompson has served as a Beyond Meat director since October 2015 and also serves as the Chair of the Compensation Committee. As a trusted director, he conducted little, if any, oversight of Beyond Meat's engagement in the scheme to make false and misleading statements and omissions and consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme and to protect corporate assets. Thompson was on its Board at the time Beyond Meat terminated the Supply Agreement and, thus, was aware prior to the IPO that such termination would expose Beyond Meat to liability in the future. Thompson also signed the IPO and SPO Materials and, therefore, personally made the false and misleading statements and omissions that were made therein. For these reasons too, Thompson breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

104.     Lane has served as a Beyond Meat director since February 2015 and also serves as a member of the Compensation Committee. As a trusted director, he conducted little, if any, oversight of the Beyond Meat's engagement in the scheme to make false and misleading statements and omissions and consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme and to protect corporate assets. Lane was on the its Board at the time Beyond Meat terminated the Supply Agreement and, thus, was aware prior to the IPO that such termination would expose the Company to liability in the future. Defendant Lane also

signed the IPO and SPO Materials and, therefore, personally made the false and misleading statements and omissions that were made therein. For these reasons too, Lane breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

105.    Stone has served as a Beyond Meat director since January 2012 and also serves as the Chair of the Nominating and Corporate Governance Committee. As a trusted director, he conducted little, if any, oversight of Beyond Meat's engagement in the scheme to make false and misleading statements and omissions and consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme and to protect corporate assets. Stone was on its Board at the time Beyond Meat terminated the Supply Agreement and, thus, was aware prior to the IPO that such termination would expose the Company to liability in the future. Stone also signed the IPO and SPO Materials and, therefore, personally made the false and misleading statements and omissions that were made therein. His insider sales before the fraud was exposed, which yielded approximately $9.86 million in proceeds, demonstrate his motive in facilitating and participating in the fraud. Additionally, Stone is the co-founder and creative director of Twitter, Inc. at which Segal has served as CFO since 2017, and, therefore, Stone is beholden to Segal. Thus, demand on Stone would be futile. For these reasons too, Stone breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

106.    Carhart has served as a Beyond Meat director since January 2016 and also serves as a member of the Audit Committee. As a trusted director, she conducted little, if any, oversight of Beyond Meat's engagement in the scheme to make false and misleading statements and omissions and consciously disregarded her duties to monitor such controls over reporting and

engagement in the scheme and to protect corporate assets. Carhart was on its Board at the time Beyond Meat terminated the Supply Agreement and, thus, was aware prior to the IPO that such termination would expose the Company to liability in the future. Defendant Carhart also signed the IPO and SPO Materials and, therefore, personally made the false and misleading statements and omissions that were made therein. Her insider sales before the fraud was exposed, which yielded approximately $6.72 million in proceeds, demonstrate her motive in facilitating and participating in the fraud. For these reasons too, Carhart breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

107.    Four of the Directors made insider sales during the Relevant Period in violation of federal law. Brown, Carhart, van Lengerich, and Stone collectively received proceeds of over $34.7 million as a result of these insider sales. Therefore, demand in this case is futile as to them, and, thus, excused.

108.    Carhart, Segal, and Waller served on Beyond Meat's Audit Committee during the Relevant Period ("Audit Committee Defendants"). Per Beyond Meat's Audit Committee Charter, the Audit Committee Defendants were responsible for overseeing, *inter alia*, the integrity of Beyond Meat's financial statements, compliance with legal and regulatory requirements, and matters implicating ethical concerns. The Audit Committee Defendants failed to ensure the integrity of Beyond Meat's financial statements and internal controls, as they are charged to do under the Audit Committee Charter, allowing Beyond Meat to file false and misleading financial statements with the SEC. Therefore, the Audit Committee Defendants breached their fiduciary duties, are not disinterested, and demand is excused as to them.

109.    The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Directors can claim exculpation from their violations of duty pursuant to Beyond Meat's charter (to the extent such a provision exists). As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of Beyond Meat's shareholders. Therefore, demand is excused as being futile.

110.    For the foregoing reasons, all of the Directors, but, if not all of them, at least five of them, could not consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

### FIRST CAUSE OF ACTION

**Against Brown and Nelson for Contribution Under Sections 10(b) and 21D of the Exchange Act**

111.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

112.    Beyond Meat, along with Defendants Brown and Nelson are named as defendants in the Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when Beyond Meat is found liable in the Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendants Brown and Nelson's willful and/or reckless violations of their obligations as officers and/or directors of Beyond Meat.

113.    Defendants Brown and Nelson, because of their positions of control and authority as officers and/or directors of Beyond Meat, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Beyond Meat, including the wrongful acts complained of herein and in the Class Action.

114.    Therefore, Defendants Brown and Nelson are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

115.    As such, Beyond Meat is entitled to receive all appropriate contribution or indemnification from Defendants Brown and Nelson.

### SECOND CAUSE OF ACTION

**Against the Individual Defendants for Breach of Fiduciary Duties**

116.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

117.    Each Individual Defendant owed to Beyond Meat the duty to exercise candor, good faith, and loyalty in the management and administration of Beyond Meat's business and affairs.

118.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

119.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to Beyond Meat, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Beyond Meat.

120.    In breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

121.    In further breach of their fiduciary duties owed to Beyond Meat, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact that failed to disclose, *inter alia*, that: (1) Beyond Meat's termination of the Supply Agreement had constituted a breach of the agreement, and would foreseeably expose the Company to legal liability, costs, and damage to the Company's reputation; (2) Beyond Meat falsely represented the accuracy of a food safety consultant's report provided to Don Lee, which certain Company employees had doctored to, among other things, exclude pertinent safety information; and (3) Beyond Meat failed to maintain internal controls.

122.    The Individual Defendants failed to correct and caused Beyond Meat to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

123.    In breach of their fiduciary duties, six of the Individual Defendants engaged in lucrative insider sales while the price of Beyond Meat's shares were artificially inflated due to the false and misleading statements of material fact discussed herein.

124.    The Individual Defendants had actual or constructive knowledge that Beyond Meat issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for

the purpose and effect of artificially inflating the price of Beyond Meat's shares and disguising insider sales.

125.    The Individual Defendants had actual or constructive knowledge that they had caused Beyond Meat to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that Beyond Meat was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Beyond Meat's stock and engaging in insider sales. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

126.    These actions were not a good-faith exercise of prudent business judgment to protect and promote Beyond Meat's corporate interests.

127.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Beyond Meat has sustained and continues to sustain significant damages. Consequently, the Individual Defendants are liable to Beyond Meat.

128.    Plaintiff on behalf of Beyond Meat has no adequate remedy at law.

### PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in Beyond Meat's favor against the Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Beyond Meat, and that Plaintiff is an adequate representative of the Company;

33

(b)     Declaring that the Individual Defendants have breached or aided and abetted the breach of their fiduciary duties to Beyond Meat;

(c)     Determining and awarding to Beyond Meat the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)     Directing Beyond Meat and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Beyond Meat and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to Beyond Meat's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2. a provision to permit the shareholders of Beyond Meat to nominate at least five candidates for election to the Board; and

3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

(e)     Awarding Beyond Meat restitution from the Individual Defendants, and each of them;

(f)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)     Granting such other and further relief as the Court may deem just and

proper.

***JURY TRIAL DEMANDED***

Plaintiff hereby demands a trial by jury.

Dated: May 27, 2020                                   Respectfully submitted,

                                                      **FARNAN LLP**

                                                      /s/ Michael J. Farnan
                                                      Brian E. Farnan (Bar No. 4089)
                                                      Michael J. Farnan (Bar No. 5165)
                                                      919 N. Market St., 12th Floor
                                                      Wilmington, DE 19801
                                                      Telephone: (302) 777-0300
                                                      Facsimile: (302) 777-0301
                                                      Email: bfarnan@farnanlaw.com
                                                              mfarnan@farnanlaw.com

Of Counsel:

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
275 Madison Avenue
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com

                                                      *Attorneys for the Plaintiff*